## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-291-RM-KMT

MARLO EDHOLM,
individually and on behalf of all others similarly situated,

                Plaintiff,

v.

AMERICANS FOR RESPONSIBLE LEADERSHIP,
an Arizona non-profit corporation,

                Defendant.

---

## UNITED STATES' MEMORANDUM IN SUPPORT OF THE CONSTITUTIONALITY OF THE TELEPHONE CONSUMER PROTECTION ACT

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..............................................................................................................................1

STATUTORY AND PROCEDURAL BACKGROUND ..................................................................1

ARGUMENT....................................................................................................................................2

I.       THE OVERBREADTH DOCTRINE DOES NOT APPLY HERE....................................3

II.     THE TCPA'S REGULATION OF AUTOMATED AND PRERECORDED
       CALLS IS A VALID TIME, PLACE, AND MANNER RESTRICTION..........................4

         A.      Section 227(b)(1)(A) of the TCPA Serves the Substantial
                  Government Interests In Protecting Users of Cellular Telephones
                  and Other Devices From Invasions of Privacy, Nuisance, and
                  Uninvited Costs..........................................................................................................4

         B.      Section 227(b)(1)(A) of the TCPA is Narrowly Tailored to
                  These Substantial Government Interests....................................................................7

         C.      Ample Alternative Channels of Communication Exist ........................................10

CONCLUSION..............................................................................................................................12

## TABLE OF AUTHORITIES

**CASES**

*Abbas v. Selling Source, LLC*,
    No. 09 cv 3413, 2009 WL. 4884471 (N.D. Ill. Dec. 14, 2010) ................................6, 8, 10

*Ashcroft v. Free Speech Coalition*,
    535 U.S. 234 (2002) ...........................................................................................................3

*Bd. of Trustees v. Fox*,
    492 U.S. 469 (1989) ...........................................................................................................8

*Bland v. Fessler*,
    88 F.3d 729 (9th Cir. 1996) ....................................................................................5, 11, 12

*Bolger v. Youngs Drug Product, Corp.*,
    463 U.S. 60 (1983) .............................................................................................................6

*Broadrick v. Oklahoma*,
    413 U.S. 601 (1973) .......................................................................................................3, 4

*Brown v. Entertainment Merchants Ass'n*,
    131 S. Ct. 2729 (2011) .......................................................................................................9

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
    447 U.S. 557 (1980) ...........................................................................................................5

*City of Ladue v. Gilleo*,
    512 U.S. 43 (1994) .............................................................................................................9

*Edenfield v. Fane*,
    507 U.S. 761 (1993) ...........................................................................................................6

*Faustin v. City, Cnty. of Denver, Colo.*,
    268 F.3d 942 (10th Cir. 2001) .........................................................................................3, 4

*In re Jiffy Lube Intern., Inc., Text Spam Litigation*,
    847 F. Supp. 2d 1253 (S.D. Cal. 2012) ..............................................................................9

*Joffe v. Acacia Mortg. Corp.*,
    121 P.3d 831 (Az. Ct. App. 2005) ...........................................................................5, 8, 11

*Kovacs v. Cooper*,
    336 U.S. 77 (1949)  .........................................................................................................11

*Lozano v. Twentieth Century Fox Film Corp.*,
    702 F. Supp. 2d 999 (N.D. Ill. 2010) .................................................................5, 6 ,9, 11

*Mainstream Mktg. Serv., Inc. v. F.T.C.*,
    358 F.3d 1228 (10th Cir. 2004) ..................................................................................3, 5

*Martin v. City of Struthers, Ohio*,
    319 U.S. 141 (1943)......................................................................................................12

*Members of City Council v. Taxpayers for Vincent*,
    466 U.S. 789 (1984)....................................................................................................3, 9

*Meyer v. Grant*,
    486 U.S. 414 (1988)......................................................................................................12

*Moser v. F.C.C.*,
    46 F.3d 970 (9th Cir. 1995) ..................................................................................... *passim*

*N.Y. State Club Ass'n, Inc. v. City of New York*,
    487 U.S. 1 (1988)............................................................................................................3

*Ohralik v. Ohio State Bar Ass'n*,
    436 U.S. 447 (1978)........................................................................................................6

*Soppet v. Enhanced Recovery Co., LLC*,
    679 F.3d 637 (7th Cir. 2012) ........................................................................................10

*Strickler v. Bijora, Inc.*,
    11 cv 3468, 2012 WL. 5386089 (N.D. Ill. Oct. 30, 2012)...............................................7

*Town of Lockport, N.Y. v. Citizens for Cmty. Action at Local Level, Inc.*,
    430 U.S. 259 (1977).......................................................................................................4

*Turner Broadcasting Sys., Inc. v. F.C.C.*,
    520 U.S. 180 (1997).......................................................................................................8

*United States v. Albertini*,
    472 U.S. 675 (1985).......................................................................................................7

*United States v. Edge Broad. Co.*,
    509 U.S. 418 (1993)......................................................................................................10

*United States v. Morrison*,
    529 U.S. 598 (2000).......................................................................................................4

*Van Bergen v. State of Minn.*,
   59 F.3d 1541 (8th Cir. 1995) ........................................................................................2, 9, 10

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989).......................................................................................................4, 7, 8

*Weinberg v. City of Chicago,*
   310 F.3d 1029 (7th Cir. 2002) ............................................................................................12

**STATUTES**

Telephone Consumer Protection Act of 1991,
   47 U.S.C. § 227 ("TCPA") ......................................................................................... *passim*

**LEGISLATIVE MATERIAL**

H.R. Rep. No. 101-633 (1991)..........................................................................................................6

H.R. Rep. No. 102-317 (1991)....................................................................................................5, 6

S. Rep. No. 102-178 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1969 ..........................5, 10, 12

**REGULATIONS**

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,
   Final Rule,* 68 Fed. Reg. 44144-01, ¶ 96 (July 25, 2003).....................................................6

## INTRODUCTION

Defendant Americans for Responsible Leadership ("ARL") brings a facial challenge to the constitutionality of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"). ARL argues that the TCPA's ban on the use of an automatic telephone dialing system or an artificial or prerecorded voice, without prior express consent, to a telephone number assigned to a cellular telephone service, 47 U.S.C. § 227(b)(1)(A), violates the First Amendment. Although Defendant purports to provide new arguments on why this decades-old TCPA provision does not meet the requirements of narrow tailoring or leave open ample alternative channels of communication, ARL's constitutional challenge is no more persuasive than the numerous other First Amendment challenges brought by previous litigants.

As many courts have recognized, the TCPA furthers the substantial government interests of protecting consumers from unwanted invasions of privacy and minimizing the nuisance and uninvited costs associated with these calls and does so in a sufficiently narrow manner. The statute's limitation on unsolicited automated calls and prerecorded messages, as opposed to manually-dialed calls or those using live operators, is supported by the particular privacy invasion and nuisance associated with automated calls, in addition to the uninvited costs imposed upon recipients. Because the prohibition on automated calls and prerecorded messages to cellular phones without prior express consent advances significant government interests in protecting consumers from intrusive and costly invasions of privacy, and does so in a way that is narrowly tailored and leaves open alternative means of communication, ARL's First Amendment challenge must fail.

## STATUTORY AND PROCEDURAL BACKGROUND

The TCPA prohibits "any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called

party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A).[1] The TCPA provides for a private right of action under which persons and entities may obtain injunctive or monetary relief for violations of the Act, including statutory damages of $500 per violation. *Id.* § 227(b)(3). Statutory damages may be trebled if the violator is found to have acted willfully or knowingly. *Id.*

According to Plaintiff, ARL used an automatic dialer to deliver prerecorded messages to cellular telephone numbers urging recipients to vote for presidential candidate Mitt Romney. Compl. ¶¶ 2, 18 (ECF No. 1). Plaintiff Marlo Edholm claims that she received these messages on her cell phone multiple times over the course of several days in early November 2012. *Id.* ¶¶ 20-24. She also alleges that she had not given her express consent to ARL to receive these prerecorded messages on her cell phone and had not even heard of ARL prior to receiving these calls. *Id.* ¶ 25. Plaintiff seeks damages for each of these calls and an injunction prohibiting ARL from engaging in similar conduct in the future. *Id.* ¶ 27. On March 15, 2013, Defendant moved to dismiss the Complaint, bringing a facial challenge to the TCPA under the First Amendment. *See* Def. Mot. to Dismiss at 9-10 (ECF No. 18). Plaintiff filed an opposition to Defendant's motion to dismiss on April 5, 2013. *See* Pl. Br. in Opp. to Def. Mot. to Dismiss (ECF No. 22). On May 24, 2013, the United States filed its notice of intervention and this memorandum in defense of the constitutionality of 47 U.S.C. § 227(b)(1)(A).

## ARGUMENT

Although ARL claims that its challenge is unique, multiple U.S. Circuit Courts of Appeal have examined these types of bans on unsolicited automated calls and prerecorded messages and found them constitutionally permissible. *See*, *e.g.*, *Moser v. F.C.C.*, 46 F.3d 970, 972 (9th Cir. 1995) (concluding that the TCPA's ban on unsolicited artificial and prerecorded messages to residential telephone subscribers, subject to exceptions promulgated by the Federal Communications Commission ("FCC"), is narrowly tailored to advance the government's interest in protecting telephone subscribers from nuisance and invasions of privacy); *Van Bergen v. State of Minn.*, 59 F.3d 1541, 1555 (8th Cir. 1995) (upholding the constitutionality of a similar

---

[1] The TCPA defines "automatic telephone dialing system" or "ATDS" as "equipment which has the capacity -- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

2

Minnesota state law forbidding unsolicited automated calls). Although the Tenth Circuit has not addressed the issue directly, it has cited the Ninth Circuit's opinion in *Moser* (upholding the TCPA ban on automated calls and prerecorded messages) with approval. *See Mainstream Mktg. Serv., Inc. v. F.T.C.*, 358 F.3d 1228, 1246 n.13 (10th Cir. 2004). As explained more fully below, the TCPA is a valid time, place and manner regulation of telephone communications. Defendant's facial challenge to the TCPA's prohibition of unsolicited automated and prerecorded calls should therefore be rejected.

## I. THE OVERBREADTH DOCTRINE DOES NOT APPLY HERE

ARL begins its argument with a confusing and misplaced invocation of the First Amendment overbreadth doctrine. *See* Def. Mot. at 3-5. "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002). The doctrine allows a party, in the very limited circumstance of First Amendment litigation, to argue that a statute should be struck down not because it is unconstitutional as applied to that party, but because it "is so broad that it may inhibit the constitutionally protected speech of third parties." *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 11 (1988) (internal citations and quotation marks omitted). As the Supreme Court has made clear, the overbreadth doctrine is "strong medicine" that should be applied "only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). It does not apply "where there is no significant difference between the claim that the ordinance is invalid because of overbreadth and the claim that it is unconstitutional when applied to the [litigating party's] own activities." *Faustin v. City, Cnty. of Denver, Colo.*, 268 F.3d 942, 948 (10th Cir. 2001). Furthermore, the overbreadth must "not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick,* 413 U.S. at 615. "The mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).

After invoking the overbreadth doctrine, ARL makes little effort to explain why it might apply here. *See* Def. Mot. at 5. Although ARL posits in its reply brief that the TCPA's restrictions would "unduly limit voicemails left by a third party exercising his or her First

3

Amendment rights," *see* Def. Reply at 11, this limitation would apply equally to ARL's own communications.  Thus, the overbreadth doctrine is not available.  *See Faustin*, 268 F.3d at 948.  Moreover, even if ARL could identify some ways in which the TCPA might infringe on the First Amendment rights of non-parties that are distinct from how it is alleged to infringe on ARL's own rights, those effects would have to be "judged in relation to the statute's plainly legitimate sweep." *Broadrick,* 413 U.S. at 615.  ARL has not even attempted that analysis.  The Court should set aside as a distraction ARL's reliance on the overbreadth doctrine and instead consider whether the TCPA, as applied to the types of calls at issue here, is valid under the First Amendment.

## II.     THE TCPA'S REGULATION OF AUTOMATED AND PRERECORDED CALLS IS A VALID TIME, PLACE, AND MANNER RESTRICTION

As both Plaintiff and Defendant recognize, because § 227(b)(1)(A) regulates "any call," regardless of its content, it is a content-neutral time, place, and manner restriction on speech.  *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *see also Moser*, 46 F.3d at 975 (analyzing § 227(b)(1)(B) of the TCPA, which prohibits "any telephone call to any residential line using an artificial or prerecorded voice", as a content-neutral time, place, and manner restriction).  The statute therefore must be upheld if it (1) serves a significant government interest, (2) is narrowly tailored to serve that interest, and (3) leaves open ample alternative channels for the communication of information.  *Ward*, 491 U.S. at 791.  As with any constitutional challenge to a federal statute, the TCPA is presumed constitutional, and ARL bears the burden of establishing its unconstitutionality.  *United States v. Morrison*, 529 U.S. 598, 607 (2000); *Town of Lockport, N.Y. v. Citizens for Cmty. Action at Local Level, Inc*., 430 U.S. 259, 272–273 (1977).

### A.     Section 227(b)(1)(A) of the TCPA Serves the Substantial Government Interests In Protecting Users of Cellular Telephones and Other Devices From Invasions of Privacy, Nuisance, and Uninvited Costs

Congress passed the TCPA in order to address threats to consumer privacy, nuisance to call recipients, and potential costs of unsolicited calls made to cell phones and other communication devices.  In doing so, Congress specifically addressed the rise of unsolicited telemarketing using automatic dialing and artificial or prerecorded voice messages, methods

which had made automated telemarketing campaigns cheaper, easier, and therefore far more prevalent. S. Rep. No. 102-178, at 1-2 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1969; H.R. Rep. No. 102-317, at 6 (1991) (noting that decreased communications costs coupled with computer-driven marketing tools "caused the frequency and number of unsolicited telemarking calls [to] increase markedly"). Such telemarketing, Congress concluded, constituted an unwarranted invasion of consumer privacy and a nuisance. H.R. Rep. No. 102-317, at 2 ("Unrestricted telemarketing . . . can be an intrusive invasion of privacy [and m]any consumers are outraged [at] the proliferation of intrusive, nuisance calls to their homes from telemarketers."); S. Rep. No. 102-178 at 7, *reprinted in* 1991 U.S.C.C.A.N. at 1976 (noting consumer complaints that telemarking calls constitute "a nuisance and an invasion of privacy").

As Defendant readily concedes, the government has a substantial interest in protecting telephone users from intrusions of privacy and from the particular nuisance associated with these devices. *See*, *e.g.*, *Mainstream Mktg.*, 358 F.3d at 1244-45 (recognizing significant government interest in protecting the privacy of individuals from telemarketing campaigns); *Bland v. Fessler*, 88 F.3d 729, 732-33 (9th Cir. 1996) ("compared to door-to-door solicitors, the annoyance and disruption of ADADs [automatic dialing and announcing devices] is of a different order of magnitude. … [W]hile door-to-door solicitation involves a conversation between two people, ADADs involve a one-way onslaught of information."); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1011 (N.D. Ill. 2010) ("[T]he TCPA serves a significant government interest[2] of minimizing the invasion of privacy caused by unsolicited telephone communications to consumers."); *Joffe v. Acacia Mortg. Corp.,* 121 P.3d 831, 842 (Az. Ct. App. 2005) ("Protecting the privacy of the home from unwarranted and unrequested intrusions constitutes significant governmental interest.").

In addition, there is a significant government interest in preventing unsolicited calls from imposing uninvited costs upon telephone subscribers. *See* S. Rep. No. 102-178 at 2, *reprinted in*

---

[2] Although the *Lozano* court applied the standard for commercial speech as set forth *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980) in upholding the constitutionality of the TCPA, its analysis and conclusion should still apply in this case because the respective tests for time, place, and manner and commercial speech restrictions are substantially similar. *See Moser*, 46 F.3d at 973 (noting that the test for time, place, and manner restrictions for content-neutral speech and that applied for commercial speech regulations are "essentially identical.").

5

1991 U.S.C.C.A.N. at 1969 (noting that "unsolicited calls placed to . . . cellular . . . telephone numbers often impose a cost on the called party [as] cellular users must pay for each incoming call"); H.R. Rep. No. 102-317, at 24 (noting that "customers who pay additional fees for cellular phones . . . are inconvenienced and even charged for receiving unsolicited calls from automatic dialer systems"); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Final Rule, 68 Fed. Reg. 44144-01, ¶ 96 (July 25, 2003) (noting that the TCPA prohibits the use of certain technologies "from dialing . . . telephone numbers assigned to wireless services, and any other numbers for which the consumer is charged for the call" because "[s]uch practices were determined to . . . inappropriately shift marketing costs from sellers to consumers.").[3]  This concern is also apparent from the statute itself.  Section 227(b)(1)(A)(iii) includes not just cell phones but other services including "any service for which the called party is charged for the call."[4]

Courts, as well, have recognized this substantial government interest in protecting telephone users from uninvited costs as a justification for the government regulation of automated calls to cell phones.  *See*, *e.g.*, *Abbas v. Selling Source, LLC*, No. 09 cv 3413, 2009 WL 4884471, at *8 (N.D. Ill. Dec. 14, 2010) (concluding that the TCPA, specifically Section 227(b)(1)(A)'s restriction with respect to cell phones, advances the  "substantial government interest" of protecting consumers from the "shifting [of] costs, pecuniary and otherwise, of telemarketing practices."); *Lozano*, 702 F. Supp. 2d at 1008 (noting specific Congressional

---

[3] This same concern was expressed in the Report issued by the House Committee on Energy and Commerce as well.  *See* H.R. Rep. No. 101-633, at 3 (stating that "customers who pay additional fees for cellular phones, pagers, or unlisted numbers are inconvenienced and even charged for receiving unsolicited ADRMP  [automatic dialing recorded message player] calls.")

[4] Defendant argues that Congress did not rely upon the uninvited costs rationale in approving Section 227(b)(1)(A), citing *Edenfield v. Fane*, 507 U.S. 761, 768 (1993) (court may not "supplant the precise interests put forward by the State with other suppositions.").  Def. Reply at 6-8.  The *Edenfield* Court's cautioning is inapplicable to this case because the United States *is* asserting a substantial government interest in protecting cell phone users from uninvited costs from automated calls and prerecorded messages, relying upon the text of the statute, House and Senate Reports, and FCC rulemaking.  Moreover, the state may rely upon interests not fully asserted at the time of enactment; indeed, even an allegedly insufficient original motivation does not diminish other substantial interests the restriction may now serve.  *See Bolger v. Youngs Drug Prod., Corp.*, 463 U.S. 60, 71 (1983) (citing *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978)).

concerns that unsolicited calls placed to cellular numbers often impose costs on the called party); *Strickler v. Bijora, Inc.*, 11 cv 3468, 2012 WL 5386089, at *5 (N.D. Ill. Oct. 30, 2012) (same).

ARL attempts to muddy the relevant government interests supporting the regulation of these calls to cellular phones by insinuating that there might be some additional impermissible government interest in eliminating or reducing low-cost communications. *See* Def. Mot. at 7 (inferring that Congress intended to "put[] a stop to low-cost, easy, or abundant telephone communications."); *id*. at 10-11 (stating that the 227(a)(1) restrictions have "the effect of decreasing the cost-effectiveness and ease of making telephone calls" which Defendant characterizes as the "goal[]" of these restrictions.). The additional interest posited by ARL does not reflect an asserted government interest, but rather ARL's re-characterization of legislative history documenting the expansion of the nuisance and privacy invasions associated with these devices. *See*, *e.g.*, *Strickler*, 2012 WL 5386089 at *6 (explaining that the inexpensiveness of automated solicitation is relevant insofar as government interests in preventing invasions of privacy and nuisance are achieved less effectively due to the wider proliferation of intrusive, nuisance messages through these devices.). In the end, Congress did not express a desire to reduce low-cost speech but rather to re-direct telemarketing efforts into less invasive and noisome channels of communications.

Thus, the overriding governmental interest animating Congress's effort is to provide an effective way of addressing particular mass telemarketing activities that invade privacy and impose nuisances and uninvited costs on the recipient. The sufficiency of Congress's chosen method for meeting cell phone user concerns about telephone solicitations must thus be evaluated with these governmental interests in mind.

### B. Section 227(b)(1)(A) of the TCPA is Narrowly Tailored to These Substantial Government Interests

"[T]he requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward*, 491 U.S. at 798–99 (1989) (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). The essence of narrow tailoring is to focus upon the source of the evils the government seeks to eliminate, without significantly restricting a substantial quantity of speech that does not create the same evils; and so long as the means chosen are not substantially broader

than necessary to achieve the government's interests, a regulation will not be invalid simply because a court a concludes that the government's interest could be adequately served by some less speech-restrictive alternative. *Turner Broadcasting Sys., Inc. v. F.C.C.*, 520 U.S. 180, 216-18 (1997) (citing *Ward*, 491 U.S. at 799 n. 7, 800). If the legislature reasonably could have determined that the regulation in question is necessary to further its interests, a court must be loath to second-guess and should defer to that judgment. *Bd. of Trustees v. Fox*, 492 U.S. 469, 479-80 (1989); *Ward*, 491 U.S. at 800; *see generally Turner*, 520 U.S. at 218-19.

In this case, given the substantial government interests in addressing the effects of intrusive, irritating, and potentially costly calls to cell phone recipients, § 227(b)(1)(A) is sufficiently narrow. As discussed above, Congress was concerned with these overlapping substantial harms associated with unsolicited telemarketing calls, including, but not limited to, calls made to cell phones using an ATDS or using artificial or prerecorded messages. Congress narrowly tailored the TCPA to that interest by prohibiting only (1) unsolicited calls, (2) made to telephone numbers assigned to one of the enumerated services in § 227(b)(1)(A)(iii), including cell phones, and (3) made from an automatic dialer and/or including an artificial or prerecorded voice. In choosing to regulate automated calls specifically, Congress acknowledged consumer frustration about the automated and prerecorded calls themselves, regardless of their content or how they were being initiated. *See* Telephone Consumer Protection Act, Pub. L. No. 102-243, § 2, ¶¶ 10, 13, 1991 Stat. 1462 (1991) (listing evidence compiled by and presented to Congress that consumers considered "***automated or prerecorded telephone calls***, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy" and that "evidence presented to the Congress indicates that ***automated or prerecorded calls*** are a nuisance and an invasion of privacy, regardless of the type of call") (emphasis added).

Courts have consistently held that the restriction on unsolicited automated or prerecorded calls sent to cell phones in Section 227(b)(1)(A) is narrowly tailored to the government's substantial interests. *See Abbas*, 2009 WL 4884471, at *8 ("The court finds that the TCPA is narrowly tailored to advance government's substantial interest in protecting the privacy of consumers, particularly from the nuisance of automated calls."); *Joffe*, 121 P.3d at 842-43 ("[A]pplication of the TCPA's restriction on autodialed calls to cellular telephones . . . is narrowly tailored to serve the significant and content-neutral governmental interest of protecting

consumer privacy from unsolicited telemarketing calls."); *see also Lozano*, 702 F. Supp. 2d at 1011-12 (rejecting defendant's argument that § 227(b)(1)(A) of the TCPA was not narrowly tailored to the substantial government interest in reducing invasions of consumer privacy); *In re Jiffy Lube Int'l, Inc., Text Spam Litigation*, 847 F. Supp. 2d 1253, 1261-62 (S.D. Cal. 2012) (same). Although the above-mentioned cases address the sending of text messages, as opposed to artificial or prerecorded messages, they confirm that the TCPA prohibition of autodialed calls to cell phones without express consent sufficiently serves the government interest in protecting cell phone users' privacy while not burdening substantially more speech than necessary. *See Jiffy Lube*, 847 F. Supp. 2d at 1261-62.

The restriction also focuses upon the use of artificial or prerecorded voice messages sent to cell phones. These types of messages were identified as needing particular attention because the recipient cannot cut off the call, cannot respond to the speaker, and may be obliged to respond, again and again, to the same unwanted caller. *Van Bergen*, 59 F.3d at 1555. Thus, the limited TCPA prohibition "responds precisely to the substantive problem[s] which legitimately concern[ed]" the Congress, *Taxpayers for Vincent*, 466 U.S. at 810, and curtail no more speech than is necessary to accomplish their purpose.

Tellingly, Defendant suggests no *narrower* category of calls to which the TCPA's proscription might be applied yet still accomplish its important purposes. Instead, ARL offers two arguments as to why it believes that TCPA's restriction on automated calls and prerecorded messages to cell phones without prior express consent might be *broadened* to address the government's interests in reducing invasions of privacy and nuisances to cell phone users. Neither of these arguments is persuasive.[5]

---

[5] Defendant argues that it is asserting a "narrow tailoring" rather than "underinclusive" argument, *see* Def. Reply at 3-5, but the two examples it provides, including manually-dialed calls and live operators leaving voicemail on cell phones without prior consent, do not suggest alternative, less restrictive types of regulation that would better address "the exact source of the evil[s] it sought to remedy." *Taxpayers for Vincent*, 466 U.S. at 808, 810. Rather, they suggest broader content-neutral regulation of additional categories of unsolicited calls, implying the statute is "underinclusive," an argument that must fail because neither example implies that the government is discriminating on the basis of content or viewpoint. *See*, *e.g.*, *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994) (addressing underinclusiveness of content-based regulation on the basis of the signs' messages); *Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2732, 2740

ARL's first argument is that from the perspective of the cell phone call recipient, manually-dialed calls are equally as invasive and nuisance-inducing as automated calls. *See* Def. Mot. at 9. However, Congress addressed the particular nuisance associated with automated calls, including, *inter alia*, consumer complaints that automated calls do not disconnect the line and do not respond to human voice commands to disconnect the call. *See* S. Rep. No. 102-178 at 2. Moreover, the use of automated dialers was directly tied to a rise in complaints from telephone subscribers and evidence was put before Congress that consumers considered these automated calls more of a nuisance than manual calls. *Moser*, 46 F.3d at 974. But even if manually-dialed calls to cell phones without prior consent are similarly intrusive and annoying, Congress is permitted to "regulate a portion of these calls without banning all of them." *Id.* at 974; *United States v. Edge Broad. Co.*, 509 U.S. 418, 434 (1993) ("Nor do we require that the Government make progress on every front before it can make progress on any front.").

ARL next argues that unanswered prerecorded messages that go straight to voicemail do not pose a nuisance or invasion of privacy any different from that of voicemail messages left by a voice operator. *See* Def Mot. to Dismiss at 10. This argument, however, does not account for the fact that unsolicited calls to cellular phones can be disruptive regardless of whether the recipient chooses to respond to the nuisance by answering the phone. And the resulting voicemail can be annoying and costly, as well as time-consuming to listen to, while occupying limited voicemail storage. *See Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637, 639 (7th Cir. 2012) (recipient of robocalls "is out of pocket the cost of the airtime minutes and has had to listen to a lot of useless voicemail"). Again, the fact that unsolicited calls made by a live person also may be costly and annoying does not preclude Congress from regulating calls to cell phones using artificial and prerecorded voice without prior express consent.

### C.     Ample Alternative Channels of Communication Exist

Finally, the TCPA leaves open multiple alternative avenues for entities to reach their target audiences other than unsolicited calls to cell phones. *See Abbas*, 2009 WL 4884471 at *8 ("Congress left open ample alternative channels through which telemarketers and would-be

---

(2011) (discussing regulation of video games based on the portrayal of certain types of images and acts as being "underinclusive").

automated callers can communicate."); *Joffe*, 121 P.3d at 842 ("Congress left open many alternative modes of communicating with consumers."); *Van Bergen*, 59 F.3d at 1555-56 (telemarketers may still employ live telephone calls, door-to-door distribution of information, street corner leafleting, posters and signs, and bulk mailings).

Moreover, an entity, such as ARL, may still employ an automatic dialing system to call the cellular phone of a person from whom it has received consent. Alternatively, a caller could make live solicitation calls or employ any other method that does not involve an automatic telephone dialing system or an artificial or prerecorded voice. Other potential methods of communication include mailings, emails and door-to-door canvassing. These various methods qualify as alternative channels of communication regardless of the fact they might be less cost efficient than sending an unsolicited automated call and/or prerecorded message. *See Moser*, 46 F.3d at 975 ("That some companies prefer the cost and efficiency of automated telemarketing does not prevent Congress from restricting the practice.").

ARL emphasizes the growing number of "cell phone only" households[6] and the costs associated with trying to reach these households using manual dialing and live operator communications. *See* Def. Mot. at 13-14. The costs associated with a particular form of communication is not controlling though because "the fact that 'more people may be more easily and cheaply reached' by a particular method of speech is not the test. *Bland*, 88 F.3d at 736 (quoting *Kovacs v. Cooper*, 336 U.S. 77, 88-89 (1949)). ARL then asserts that the TCPA does not leave open sufficient channels because it bans "*all* calls placed to cellular telephones regardless of whether the call recipient has consented." Def. Mot. at 13 (emphasis in original). However, that description of the statute is incorrect because as explained above, a caller *is* permitted to make automated calls if they are "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A); *see also Lozano*, 702 F. Supp. 2d 999, 1012 ("the TCPA does not prohibit calls in which consumers have consented to the call"). Congress has ensured that

---

[6] Although ARL points to expanded cell phone use in support of its argument that parties who wish to contact others without consent by telephone have limited alternative channels of communication, *see*, *e.g.*, Def Mot. to Dismiss at 13, at least one court has observed that the ubiquity of cellular phones actually heightens the privacy interests (*i.e.*, the substantial government interest) supporting the TCPA regulation in question. *Joffe*, 121 P.3d at 842 (noting that the cellular telephone has "permeated American life," such that it "commands our instant attention" and "demands to be answered").

telephone solicitors like ARL may place automated calls to those who consent, even allowing that "such consent can be obtained at the beginning of a telephone call by a 'live' person" (who could then switch to a recorded or computerized message). S. Rep. No. 102-178 at 8. Finally, the regulation in this case may be distinguished from other ordinances restricting in-person solicitations because ATDS and prerecorded messages do not involve interaction between two people (analogous to door-to-door solicitations or pamphleteering), but rather a one-way onslaught of information, *see Bland*, 88 F.3d at 733, for which there are plenty of similar, alternative methods of communicating the same information.[7]

## CONCLUSION

In conclusion, Section 227(b)(1)(A) of the TCPA furthers the substantial government interests in reducing the number of invasive, nuisance-inducing, and potentially costly calls to consumers. Its restrictions are limited to the transmission of unsolicited prerecorded messages using specifically-defined equipment to cell phones, and leave open ample alternative means of communication. Accordingly, the statute satisfies the test applied to time, place, and manner restrictions on speech, and this Court should reject ARL's First Amendment challenge.

For these reasons, the United States urges this Court to join the overwhelming number of federal and state courts in upholding the constitutionality of the TCPA.

---

[7] The cases cited by ARL do not support its assertion that callers lack sufficient alternative channels of communication. The first case addresses a city ordinance making it unlawful to knock on doors to distribute handbills, *see Martin v. City of Struthers, Ohio*, 319 U.S. 141, 142 (1943), for which solicitors were not permitted to get homeowners' consent. By contrast, in this case, telemarketers do have the ability to obtain prior consent from cell phone users. The second case cited by ARL addressed a statute establishing a felony offense for paying or receiving fees for circulating referendum petitions. *Meyer v. Grant*, 486 U.S. 414, 416 (1988). Rather than simply a time, place, and manner restriction, that statute placed an encumbrance on citizens' ability to petition, limiting their ability to make the matter the focus of statewide discussion. *Id.* at 423. Hence, the court emphasized that "[t]he case involve[d] a limitation on political expression subject to exacting scrutiny." *Id.* at 416. Finally, the Court of Appeals' discussion of alternative channels of communication in *Weinberg v. City of Chicago* is dicta. 310 F.3d 1029, 1034, 1040 (7th Cir. 2002) ("Having found that the City has failed to show the ordinance advances a significant governmental interest, further discussion of whether the ordinance is a reasonable time, place, and manner restriction is not mandatory.").

May 24, 2013                                    STUART F. DELERY
                                                Acting Assistant Attorney General

                                                JOHN F. WALSH
                                                United States Attorney

                                                JOHN R. GRIFFITHS
                                                Assistant Branch Director


                                                 /s/ Bradley H. Cohen
                                                BRADLEY H. COHEN
                                                Trial Attorney
                                                U.S. Department of Justice, Civil Division
                                                Federal Programs Branch
                                                P.O. Box 883
                                                Washington, D.C.  20044
                                                Telephone: (202) 305-9855
                                                Facsimile: (202) 616-8202
                                                E-mail: bradley.cohen@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2013, I electronically filed the foregoing pleading with the Clerk of Court using the ECF system, which will send notification of such filing to counsel of record.

/s/ Bradley H. Cohen
BRADLEY H. COHEN